UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

**Dyshawn Pierre,**

   *Plaintiff,*

v.                       Case No. 3:15-cv-362
                          Judge Thomas M. Rose

**University of Dayton,**

   *Defendant.*

---

**ENTRY AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION.** (DOC. 2).

---

   Pending before the Court is Plaintiff's Motion for Preliminary Injunction. Doc. 2. Therein, Plaintiff Dyshawn Pierre asks the Court to forbid Defendant the University of Dayton from enforcing its imposition of a one-semester suspension. (Doc. 2). Plaintiff's Complaint charges Defendant with breach of contract in failing to adhere to provisions of its student handbook, negligence in breaching a duty to provide a fundamentally fair hearing, violation of the Rehabilitation Act, 29 U.S.C. § 794(a) by failing to accommodate Pierre's disability, violation of the Americans with Disabilities Act, 42 U.S.C. § 12182, violation of Title IX, 20 U.S.C. §§ 1681(a), 1687, by rendering an erroneous outcome by means denial of a fundamentally fair hearing and violation of Title IX by deliberate indifference by tolerating procedures that deny his right to a fair hearing. Doc. 1. Plaintiff further seeks equitable relief in the form of vacatur of the University Hearing Board decision on the bases of partiality and misconduct. Id.

1

A hearing was held November 16, 17, 30 and December 1. At the conclusion of the hearing, the Court invited the parties to submit post-hearing briefs not to exceed ten pages, which both parties did on December 10. The matter is now ripe for adjudication.

When considering a motion for preliminary injunction, courts must balance: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction. *PACCAR Inc. v. TeleScan Techs., L.L.C.*, 319 F.3d 243, 249 (6th Cir. 2003). "The four considerations applicable to preliminary injunction decisions are factors to be balanced, not prerequisites that must be met." *Jones v. City of Monroe*, 341 F.3d 474, 476 (6th Cir. 2003) (citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir. 1985)). A district court is not required to make specific findings concerning each of the four factors used in determining a motion for preliminary injunction if fewer factors are dispositive of the issue. *Id.*; citing *Mascio v. Public Employees Retirement Sys. of Ohio*, 160 F.3d 310, 312 (6th Cir. 1998) (affirming the district court's grant of a preliminary injunction based on the district court's conclusion that the plaintiff had demonstrated a substantial likelihood of success on the merits). It is nevertheless "generally useful for the district court to analyze all four of the preliminary injunction factors." *Certified Restoration Dry Cleaning v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007) (internal citation omitted). The weight a district court gives to each of the four factors and resulting decision to grant or deny preliminary injunctive relief is examined under the abuse of discretion standard. *PACCAR*, 319 F.3d at 249; *N.A.A.C.P.*, 866 F.2d at 166 (noting that a "district judge's weighing and balancing of the equities should be disturbed on appeal only in the rarest of cases"). See also *Butler v. Hotel California, Inc.*, 2015 WL 3408786, at *3 (N.D. Ohio May 27, 2015). The first

order of business, then, is to consider whether the movant has a strong likelihood of success on the merits of each claim.

Pierre asserts that the University of Dayton breached contractual obligations by failing to provide specialized training to its Title IX investigators, by failing to adhere to a contractual obligation regarding timeliness, by failing to adhere to a contractual obligation regarding fulfillment administrative responsibilities, by failing to adhere to a contractual obligation regarding notice, and by failing to adhere to a contractual obligation regarding treating the parties equally. Plaintiff also claims that the University failed to accommodate a disability. Plaintiff also claims violation of a contractual duty of fair dealing and good faith by an alleged lack of due process and allegedly improper burden shifting. Plaintiff then, under the umbrella of an allegation of bias and impartiality, criticizes the report's result.

Plaintiff is not likely to prevail on his claimed lack of notice. A complaint was filed against Plaintiff with the University on May 3, 2015. On May 4, Pierre was notified that a report had been received by the University's Title IX/Equity Compliance Office concerning "incidents which may involve sexual discrimination, including sexual harassment and sexual violence" and that the University would be investigating the report. (Doc. 2-6) A copy of the report was attached to the May 4 correspondence. (Id.) The correspondence informed Pierre where to find a description of the procedures and protocols regarding the investigation; advised Pierre that he had a right not to participate in the investigation process; advised him that refusing to participate or limiting his participation may limit the University's ability to discover facts he may believe are pertinent; advised him that he would not be able to submit information to the student conduct system unless he submitted it through the investigation; and informed him that the Title IX/Equity Compliance Office would answer any questions he had about the process. (Id.)

Plaintiff posits that he "was investigated, referred and ultimately disciplined for having engaged in unconsented to touching, not sexual violence." Doc. 28, at 7, PAGEID# 665. Plaintiff ignores that he was notified of an investigation concerning "incidents which may involve sexual discrimination, including sexual harassment and sexual violence." The University Student Handbook advises: "Sexual harassment includes but it not limited to nonconsensual sexual contact…." Doc. 2-3, at 53, PAGEID# 142. Later the Student Handbook states, "Sexual violence could include, but is not limited to: non-consensual sexual contact…." Id. at 54, PAGEID# 143. Plaintiff is not likely to prevail on his claim that he was not notified that he was being investigated for unconsented sexual touching.

Neither is Plaintiff likely to prevail on his claims that the University failed to provide specialized training to its investigators. Two professors in the University's School of Law were assigned as the Title IX investigators. (Id. at ¶2) Both completed specialized training in undertaking Title IX investigations and had been certified by the Association of Title IX Administrators. (Id. at ¶3) Plaintiff points to no authority for his position that other training was required.

Plaintiff alleges a failure to adhere to administrative responsibilities in carrying out the investigation. Plaintiff describes these shortcomings as "evidence of the investigators' lack of training" Doc. 28, at 6, PAGEID# 664. While Plaintiff might be able to show a failure to adhere to training course materials entered in Plaintiff's Exhibit 18, this leaves a tenuous case regarding a contractual claim of failure to train, as the evidence is that the investigators were trained to follow these procedures. Neither is it clear how prevailing on this point shows a harm that can only be repaired by means of a preliminary injunction.

Neither is Plaintiff likely to prevail on his allegation that the University failed to comply with a contractual obligation regarding timeliness. The University's *Equity Complaint Process for Resolving Complaints of Harassment, Sexual Misconduct and Other Forms of Discrimination* states:

> The investigation and resolution shall be completed *as promptly as possible* and *in most cases* within 60 working days of the date the complaint was received, *unless extenuating circumstances interfere with such timely completion.* Typically, the formal investigation phase will be completed within 30 working days of the completion of the investigation. In the event that an investigation and resolution cannot be completed within 60 working days, the parties shall be notified in writing.

Doc. 2-5, at 6, PAGEID# 215.

The provision in which Plaintiff seeks a promise is couched in so many qualifiers that it is not likely the amount of time taken to resolve this case could be said to be a contractual violation. While Plaintiff also points to the provision for written notice if the investigation is not completed within 60 days, the University's ongoing correspondence with Plaintiff would arguably fulfill this requirement. There does not appear to be a point in time in the investigation where Plaintiff was unaware of the date on which the next step in the process was scheduled. In any event, here, as elsewhere, Plaintiff makes no explanation as to how a potential violation of this provision would irreparably harm Plaintiff in a manner necessitating a preliminary injunction.

Neither is Plaintiff likely to prevail on his claimed violation of contractual obligations to provide equal treatment. Plaintiff asserts, "[the University] is obliged, as set forth in the Handbook, to assure fairness and equal treatment of the accuser and the accused. (Ex. 20 at 62)." Plaintiff's Exhibit 20, however, is not the student handbook, but a "Campus Title IX Investigation Training" material from the Association of Title IX Administrators. While Plaintiff appears to

pursue this as a contract claim, it is not clear how the Title IX training is incorporated into the contract. Moreover, page 62 speaks not of "equal" treatment, but "equitable," which is described as "fair under the circumstances."

Plaintiff decries that "investigators provided [Plaintiff]'s statement to Accuser during her June 4 interview, giving Accuser an opportunity for rebuttal. In contrast, Plaintiff was never afforded an opportunity to respond to the new allegations or the shifting stories Accuser provided." Doc. 28, at 7, PAGEID# 665. Plaintiff's position is undercut by the fact that he could have asked that these questions be asked at the hearing, at which he was represented by counsel, who could have written questions out for him.

Plaintiff is not likely to prevail on his failure to accommodate claim. Plaintiff never requested an accommodation during his disciplinary process until it was over and he appealed. See *Carlson v. Carroll Univ.*, No. 09-C-551, 2011WL 5921445, at *14 (E.D. Wis. Nov. 28, 2011) (dismissing plaintiff's claim for failure to accommodate because "Carlson cited no record evidence showing that she made this request to anyone"); *Buescher v. Baldwin Wallace Univ.*, 86 F. Supp. 3d 789, 806 (N.D. Ohio 2015) ("[S]he did not request an accommodation for her disability and there can be no failure to accommodate."). Moreover, provision of counsel during the hearing was likely an adequate accommodation.

Plaintiff is not likely to prevail on his breach of duty of fair dealing and procedural integrity claims both because he never pleaded these causes of action in his complaint, (see doc. 1), and because the disciplinary hearing did not lack due process, as he now claims, and because there was no improper burden shifting. The University Handbook states:

> Effective Consent: Whether sexual misconduct has occurred depends in part on whether "effective consent" exists. Effective consent is granted when a person freely, actively, and knowingly

> agrees at the time to participate in a particular sexual act with a particular person. Effective Consent exists when mutually understandable words and/or actions demonstrate a willingness to participate in mutually-agreed-upon activity at every stage of that sexual activity. Effective consent has time boundaries. Consent at one time does not imply consent at another time. The existence of a dating/romantic relationship between the persons involved or the fact of a previous sexual relationship does not automatically establish effective consent for future sexual activity.

Doc. 2-3, at 55, PAGEID# 144. Plaintiff brings to the Court's attention no cases holding this standard as violative of Title IX. The Court does not find Plaintiff likely to succeed on a claim that this provision impermissibly shifts the burden of proof to Plaintiff.

Neither is Plaintiff likely to prevail on his claim that the Title IX report was biased and prejudicial. Plaintiff portrays Accuser's stories as inconsistent and accuses the investigators of failing to investigate contradictions in Plaintiff and Accuser's stories. Plaintiff correctly asserts that the report included irrelevant positive allegations of Accuser's sexual history. These irregularities amount to little. They are mitigated by the presence of counsel who was able to assist Plaintiff in formulating questions of the witnesses and Accuser. Ultimately, there is no material factual dispute between the Plaintiff and Accused. Plaintiff was asked what gave him to understand he had consent, and he could articulate none beyond the amorphous "her general body language." The University Hearing Board could reasonably find this was not "mutually understandable words … or actions demonstrat[ing] a willingness to participate in mutually-agreed-upon activity at every stage of…sexual activity."

Plaintiff is unlikely to prevail on the merits of his claims. Even if he were, he has advanced no arguments that any of his injuries are irreparable. For these reasons, Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, (Doc. 2) is **DENIED**.

December 11, 2015

                                            s/Thomas M. Rose

                                  _____
                                            THOMAS M. ROSE
                                UNITED STATES DISTRICT JUDGE